# United States District Court
## for the Northern District of Oklahoma

Case No. 24-cr-214-JDR-3

UNITED STATES,

*Plaintiff*,

*versus*

MORGAN ASHLEY KIRBY,

*Defendant*.

## OPINION AND ORDER

Defendant Morgan Ashley Kirby filed three motions that remain pending: (1) to dismiss or strike count one of the indictment [Dkt. 75]; (2) to compel disclosure of the DEA's confidential source [Dkt. 77]; and (3) to suppress evidence found as the result of state search warrants [Dkt. 78]. She also objects to the government's notice of intent to introduce Rule 404(b) evidence [Dkt. 71].

### I.

Ms. Kirby and two others are charged with drug conspiracy in count one of the indictment. Dkt. 42. Ms. Kirby and one other are charged in count three of the indictment alleging attempted possession of methamphetamine with intent to distribute. *Id*. Ms. Kirby and her co-defendant, Luis Rios-Soriano, were both present in a car on June 12, 2024, when their co-defendant, Feliciano Ortega-Banderas, acting in cooperation with the Drug Enforcement Administration Task Force, made a controlled delivery of "bunk"

No. 24-cr-214

methamphetamine. Dkt. 1 at 5-10. The complaint alleges that the "bunk" methamphetamine was delivered to the occupants of a red Chrysler 300 driven by Mr. Rios-Soriano and accompanied by Ms. Kirby. *Id*. Mr. Ortega-Banderas received U.S. currency from Mr. Rios-Soriano. *Id*. at 8. After counting the money, Mr. Ortega-Banderas got the suitcase with "bunk" methamphetamine from the back of his car and placed the suitcase in the backseat of the Chrysler 300 driven by Mr. Rios-Soriano with Ms. Kirby as his passenger. Law enforcement conducted a probable cause traffic stop of the Chrysler 300 and arrested Mr. Rios-Soriano and Ms. Kirby. *Id*. at 8-9.

## II.

Ms. Kirby asserts that the Court should dismiss or strike count one of the indictment [Dkt. 75] on the grounds that it does not adequately allege interdependence among the conspirators, an element unique to the Tenth Circuit. *See* Criminal Pattern Jury Instructions, § 2.19 cmt., at 111-112 ("The Tenth Circuit is unique, at least among federal jurisdictions, in requiring the inclusion of 'interdependence' between or among conspirators as an essential element of conspiracies charged under 18 U.S.C. § 371 and 21 U.S.C. § 846.") (2021). The government may prove interdependence by showing "that [the conspirators] intended to act together for their shared mutual benefit within the scope of the conspiracy charged." *United States v. Evans*, 970 F.2d 663, 671 (10th Cir. 1992).

Proving interdependence and alleging interdependence are two different matters. "Interdependence exists where coconspirators 'inten[d] to act together for their shared mutual benefit within the scope of the conspiracy charged.'" *United States v. Caldwell*, 589 F.3d 1323, 1329 (10th Cir. 2009) (quoting *Evans*, 970 F.2d at 671). An indictment must contain the elements of the offense, but those "elements 'need not be charged with the same degree of specificity as would ordinarily be required in a prosecution based on the underlying offense.'" *United States v. Wells*, 873 F.3d 1241, 1255 (10th Cir. 2017) (quoting *United States v. Bedford*, 536 F.3d 1148, 1156 (10th Cir. 2008)).

No. 24-cr-214

In *Wells*, the Tenth Circuit dealt squarely with the sufficiency of a charging document's allegations of interdependence. *Id.* "With regard to interdependence, so long as the charging document 'describe[s] the interdependent behavior of the coconspirators,' it is sufficient." *Id.* (quoting *Bedford*, 536 F.3d at 1157).

It is generally sufficient for an indictment to set forth the offense in the words of the statute itself as long as "'those words of themselves fully, directly and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *Hamling v. United States*, 418 U.S. 87, 117 (1974) (quoting *United States v Carll*, 105 U.S. 611, 612 (1882)). Failure to allege the statutory elements will not be fatal provided that alternative language is used or that the essential elements are charged in the indictment by necessary implication. *United States v. Brown*, 995 F.2d 1493, 1505 (10th Cir. 1993) (in post-verdict challenge to indictment, sufficiency will be found when "words of similar import" to element in question exist).

The indictment should be read as a whole and interpreted in a common-sense manner; it is contrary to the spirit of Rule 7, and the Rules generally, to take counts of an indictment out of context and ignore their plain meaning. *See United States v. Givens*, 767 F.2d 574, 584 (9th Cir. 1985). The standard for determining the sufficiency of an indictment is based upon practical, not technical considerations. The test involves "minimal constitutional standards, not whether a better indictment could have been written." *McKay v. Collins*, 12 F.3d 66, 69 (5th Cir. 1994). "The essential elements of the offense, including knowledge or intent, must be included in the indictment but need not be expressed in any specific terms." *Id.* at 69 (citing *United States v. Arteaga-Limones*, 529 F.2d 1183 (5th Cir.)). "The 'plain and sensible meaning of the language used' may give the defendant notice sufficient to meet the requirements of the sixth amendment." *Id.* at 69 (quoting *United States v. Haas*, 583 F.2d 216 (5th Cir. 1978)). "An indictment should be found

sufficient unless no reasonable construction of the indictment would charge the offense for which the defendant has been convicted." *Id.* (citing *United States v. Salinas*, 956 F.2d 80 (5th Cir. 1992)).

The indictment recites the statutory language of 21 U.S.C. § 846. Although sparing in details, the indictment adequately informs Ms. Kirby of the allegation of interdependence. The interdependence element is not explicitly set forth in the statute; the element is implicit in the statutory language. *See Evans*, 970 F.2d at 671. It therefore follows that an indictment that tracks the statutory language sufficiently alleges interdependent conduct. The indictment provides notice to Ms. Kirby that she, along with co-defendants Ortega-Banderas and Rios-Soriano, "knowingly, intentionally, and willfully conspired, confederated, and agreed, together with others known and unknown to the Grand Jury," to distribute methamphetamine. Dkt. 42. By agreeing to act together to distribute drugs, the defendants here were "act[ing] *together* for their shared mutual benefit within the scope of the conspiracy charged," and are, therefore, alleged to have acted interdependently. *Evans*, 970 F.2d at 671 (interdependence exists where coconspirators "inten[d] to act *together* for their *shared mutual benefit* within the scope of the conspiracy charged." (emphasis in original)).

The Court has not found any Tenth Circuit authority requiring specific language to allege interdependence. As noted above, the interdependence element is implicit in the conspiracy statute. *See id.* It therefore follows that alleging the statutory language implying interdependence should also be sufficient to inform the defendants of the charge. The Court finds that the indictment sufficiently alleges that the conspirators acted interdependently. Ms. Kirby's motion to dismiss or to strike count one [Dkt. 75] is denied.

### III.

Ms. Kirby moves to compel the disclosure of the Drug Enforcement Administration's Confidential Source that is referenced in affidavits for two warrants for installation and use of automobile tracking devices. Dkt. 77. Ms.

No. 24-cr-214

Kirby argues that the only people "who can testify to [Ms. Kirby's] actions from the investigation which would indicate her knowledge of a conspiracy" are the CS "who performed the controlled pickups that led to the GPS trackers and the undercover officer that participated in the pickup on May 22, 2024." *Id.* at 6.

Ms. Kirby is mistaken about the role and knowledge of the CS. A Tulsa County Special Judge signed the first warrant for a tracking device on May 6, 2024. The affidavit for the first warrant [Dkt. 77-1], refers to multiple conversations in Spanish between the CS and a person subscribed to a telephone number in Mexico. *Id.* at 3. In those conversations, the CS "coordinated to meet with a member of the [Drug Trafficking Organization] at a location within Tulsa County." *Id.* "The Spanish-speaking male informed the CS that someone from the DTO would meet him and that they would be driving a gray **Dodge Charger**." *Id.* (emphasis in original). In the week preceding the May 6 warrant, the CS, under the direction of DEA agents and in conformity with the instructions by the Spanish-speaking telephone correspondent, met with a Hispanic male driving a gray Dodge Charger in a parking lot in Tulsa and received a bag with a "large sum of U.S. currency." *Id.* The warrant doesn't mention Ms. Kirby as having been present with the driver of the Dodge Charger. There is no evidence that the CS ever met with or even knows Ms. Kirby, a fact that Ms. Kirby conceded at the hearing on this motion.

The affidavit says nothing about the CS's knowledge of the identity of the Hispanic male driving the Dodge Charger, and that makes sense under the circumstances. Following the exchange of money, the DEA agents attempted to follow the Dodge Charger, but they were unsuccessful in following the car to its ultimate location. *Id.* The DEA agents were, however, able to record the license plate number for the Charger, and they traced the car to Defendants Kirby and Rios-Soriano. *Id.* at 3-4. For the transaction supporting the first tracking warrant, there is no indication that the CS knew the

Hispanic male driving the Dodge Charger, who was presumably Defendant Rios-Soriano. If the CS had known Mr. Rios-Soriano and, by extension, Ms. Kirby, the CS would presumably have said so and given agents his identification. There wouldn't have been any need to trace the license plate number if the CS knew Mr. Rios-Soriano from the transaction.

A Tulsa County Special Judge signed the second warrant for a tracking device for a maroon Chrysler 300 [Dkt. 77-2] on May 23, 2024. In the affidavit for the second warrant, there is no reference to the CS being involved in the arrangements to collect another bag of U.S. currency. Instead, the undercover DEA Agent directly made contact with the Spanish-speaking male with the Mexican telephone number, and the undercover agent met Defendants Kirby and Rios-Soriano to collect the money. *See id.* There is nothing in the second warrant to indicate that the CS knew any of the defendants.

Neither affidavit for the tracking warrants mentioned that the CS knew either Ms. Kirby or Mr. Rios-Soriano. And again, it follows from the facts that the CS would *not* know either of those defendants. In the first affidavit's description of the exchange between the CS and Rios-Soriano in early May 2024, there is no indication that the CS knew Rios-Soriano, and Defendant Kirby is not mentioned. The CS does not indicate any knowledge of the identities of Defendants Kirby and Rios-Soriano.

In *Roviaro v. United States*, 353 U.S. 53 (1957), the Supreme Court considered the circumstances under which the government had the "right to withhold the identity of an informer who helped to set up the commission of the crime and who was present at its occurrence." *Id.* at 61. The Supreme Court declined to create a "fixed" rule for this issue and, instead, directed lower courts to consider "the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* at 62. The Tenth Circuit has explained that "[t]he government enjoys a privilege to withhold disclosure of a confidential source's identity due to a strong public

No. 24-cr-214

interest in furthering effective law enforcement," and disclosure is not appropriate "when the identity is not relevant, helpful, or serves merely a cumulative purpose ...." *United States v. Robinson*, 993 F.3d 839, 847-48 (10th Cir. 2021). Disclosure of the informant's identity is required "in limited circumstances where the defendant's need for information to prepare his defense outweighs the government's need to protect its sources." *United States v. Long*, 774 F.3d 653, 663 (10th Cir. 2014) (citing *Roviaro*, 353 U.S. at 62). Defendant bears the burden of demonstrating the need for disclosure of the informant's identity. *United States v. Vincent*, 611 F.3d 1246, 1251 (10th Cir. 2010).

Ms. Kirby has not met her burden. The CS did not participate in any transaction with Ms. Kirby or her co-defendants. There is no indication in the affidavits for the tracking devices that the CS knew any of the defendants. The record as it relates to the CS does not, therefore, support Ms. Kirby's defense that she was merely present at the scene of the handover of U.S. currency and had no knowledge of the drug conspiracy or the transfer of money. It is unclear from the Court's review of the record the source of the following from Ms. Kirby's motion: "[T]he only person who had contact with [Ms. Kirby] and Mr. Rios-Soriano was the CS." Dkt. 77 at 6. The record before the Court does not reflect any contact between the CS and Ms. Kirby. It is therefore unclear how the identity of the CS could "be instrumental in proving whether or not Ms. Kirby had knowledge of the drug conspiracy or whether there was interdependence as it relates to her within a possible conspiracy...." *Cf.* Dkt. 77 at 7. Ms. Kirby has not shown that the identification of the CS will be helpful or relevant to her defense. Her motion to identify the CS is, therefore, denied.

IV.

Ms. Kirby also asks the Court to suppress the evidence found pursuant to state warrants for GPS trackers on two cars. Dkt. 78. She argues that the warrants were in violation of Federal Rule of Criminal Procedure 41 because

No. 24-cr-214

the investigations were federal in nature and there was no showing that a federal magistrate judge was unavailable. *Id.* at 4-7. Although the issue of whether an investigation is of a federal or state nature and which jurisdiction is proper to grant search warrants has been recently analyzed in this District[1], the Court need not address it here. The Government takes the position that the GPS trackers and any data obtained from them are not relevant to the indictment in this case and will not be discussed at trial. Dkt. 85. The Court will hold the Government to this position at trial. *See, e.g., United States v. Garcia*, No. 22-CR-1171-JCH, 2024 WL 1716667, at *4 (D.N.M. Apr. 22, 2024). Because the Government will not seek to introduce this evidence, Ms. Kirby's motion to suppress the evidence is denied as moot.

V.

The government noticed its intent to offer evidence under Rule 404(b)(3) of the Federal Rules of Evidence. Dkt. 67. The government seeks to introduce evidence that on or about May 22, 2024, Ms. Kirby participated "in a money transaction related to drug trafficking." *Id.* at 1. On that date, an undercover DEA agent, in relation to a drug trafficking investigation that is different from the charged conduct, received $50,000 in U.S. currency from a car in which Ms. Kirby was the passenger. *Id.* From the video captured by the undercover agent, Ms. Kirby, sitting in the front passenger seat of the car, lifts a bag from the front passenger floorboard and hands it to the undercover agent. Dkt. 71 at 2. The government offers this evidence to prove Ms. Kirby's knowledge of drug trafficking. Dkt. 67 at 2-3 And with that knowledge, the government contends she knew that the transaction on June 12, 2024, was in fact a drug trafficking event. *Id.*

For her part, Ms. Kirby objects to the notice and moves to exclude any evidence of the May 22, 2024, exchange with the undercover DEA agent.

---

[1] *United States v. Holt*, No. 24-CR-0050-JFH, 2024 WL 3510296 (N.D. Okla. July 23, 2024); *United States v. Ramirez-Flores*, No. 23-CR-00190-GKF, 2023 WL 6585820 (N.D. Okla. Oct. 10, 2023).

No. 24-cr-214

Dkt. 71. Evidence of a prior act may be admitted at trial under Rule 404(b) if
(1) it is offered for a proper purpose; (2) it is relevant; (3)the probative value
of the evidence is not substantially outweighed by its potential for unfair prej-
udice; and (4) the trial court, upon request, instructs the jury that the evi-
dence is to be considered only for the proper purpose for which it was admit-
ted. *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988). A proper pur-
pose can be proving motive, opportunity, intent, preparation, plan,
knowledge, identity, absence of mistake, or lack of accident. Fed. R. Evid.
404(b)(2). Here, the government seeks to introduce evidence of the May 22
transaction to prove Ms. Kirby's knowledge of the drug conspiracy and to
counter a mistake or accident argument. These are both proper purposes and
the first *Huddleston* element is satisfied.

Turning to the second element, the relevance of Rule 404(b) evidence
can be difficult to determine before trial when "questions of relevance [are]
conditioned on a fact." *Id.* at 689. Ms. Kirby argues that the May 22 transac-
tion is not relevant because she did not know that drug proceeds were in the
bag. But this Court is not required to "weigh[ ] credibility nor make[ ] a find-
ing that the government has proved [Ms. Kirby knew what was in the bag] by
a preponderance of the evidence." *Id.* at 690. Instead, "[t]he court simply ex-
amines all the evidence in the case and decides whether the jury could rea-
sonably find the conditional fact … by a preponderance of the evidence." *Id.*
At this stage, the Court lacks sufficient information to analyze the second and
third *Huddleston* elements and, thus, reserves ruling on admissibility until
trial. *See id.* ("The trial court has traditionally exercised the broadest sort of
discretion in controlling the order of proof at trial …."); *see also United States
v. Bhula*, No. 1:19-cr-01631-DHU, 2023 WL 1993814, at *5 (D.N.M. Feb. 14,
2023) (reserving ruling on admissibility of Rule 404(b) evidence until trial be-
cause "the Court lacks sufficient information to meaningfully apply the *Hud-
dleston* factors"). The government is instructed to notify the Court before in-
troducing the Rule 404(b) evidence at trial.

No. 24-cr-214

## VI.

Ms. Kirby's motion to dismiss count one of the indictment [Dkt. 75] and motion to compel disclosure of confidential source [Dkt. 77] are denied. The motion to suppress [Dkt. 78] is denied as moot, and the Court reserves ruling on Ms. Kirby's objection to the government's notice of intent to introduce Rule 404(b) evidence [Dkt. 71] until trial.

DATED this 27th day of November 2024.

_____
John D. Russell
*United States District Judge*